GARDEN, JUDGE:
In February of 1975, the Director of the Purchasing Division, Department of Finance and Administration, pursuant to Code 5A-3-12, solicited bids for certain remodeling work to be performed on the second floor of the Workmen’s Compensation Building located at 112 California Avenue in Charleston. In general, the contemplated work required the removal of 380 feet of existing partitioning and the re-installation of 69 feet of partitioning in new areas. The successful bidder was also required to clean up and deliver any unused partitioning to State Surplus Properties in Dunbar.
Bids, which were opened on May 8, 1975, were received, from Robert E. Agsten, Inc. in an amount of $4,540.00,’from Leonard D. Brogan, d/b/a Peck Brogan Building & Remodeling, hereinafter referred to as Brogan, in an amount of $14,695.00, and from Charleston Acoustics in an amount of $16,831.47. Brogan attended the bid opening but upon learning that a bid lower than his had been submitted, he thought no further about the job until a few days later when he received a letter dated May 9, 1975, from the Purchasing Division advising him that he was the successful bidder. The letter further directed him to deliver certain documentation such as a performance bond, labor and material bond, etc. to the Purchasing Division on or before May 23, 1975. Brogan testified that he then went to the office of Thomas Mathewson, a buyer for the Purchasing Division, and Mr. Mathewson confirmed that he, Brogan, was the successful bidder. Brogan then went to the office of Ray E. Lane, Director of Operations for the Workmen’s Compensation Fund, and advised Mr. Lane that he was the successful bidder. Lane then directed Brogan to get started so that the work could be completed by June 30th, before the close of the fiscal year. Brogan started work on the *146 project on May 22, 1975, and completed the same in a satisfactory manner. The evidence disclosed that while a purchase order had been prepared, it was never signed and delivered to Brogan. Obviously, the provisions of Article 3 of Chapter 5A of the Code were not followed, and the agreement or contract with Brogan was void and of no effect (see Code 5A-3-19).
The evidence clearly demonstrated the existence of an inter-agency foul-up, but it is not clear to this Court which agency, the Workmen’s Compensation Fund or the Department of Finance and Administration, was responsibile. Mathewson testified that he was present at the bid opening on May 8,1975, and that the low bid was received from Agsten; however, and as a result of a short note that he received from Lane, he wrote the letter of May 9, 1975, to Brogan advising him that he was the successful bidder. In his later testimony, he stated that he could not recall who authorized him to write the May 9, 1975, letter to Brogan. Lane, on the other hand, testified that he had written a three sentence letter to Mathewson in the middle of June in an attempt to justify the execution of a purchase order to Brogan. He stated that this was done at the request of Finance and Administration, but he denied having any contact with Mathewson prior to Mathewson writing his letter of May 9, 1975.
It appeared that prior to the submission of bids, Lane orally advised each bidder that the contract would not include any electrical work and the touch-up painting and the removal of a certain Dutch door would be eliminated from the work to be performed. Consequently, when Agsten submitted his bid, these items were specifically excluded by him but were not so excluded by Brogan. Finance and Administration, having not been advised by Lane that items were to be excluded believed that Agsten obviously had not submitted a bid for all of the work to be performed, and that this accounted for the large difference between the Agsten bid and the Brogan bid, and without checking the matter further, advised Brogan that he was the successful bidder.
Brogan testified that he had done work for the Workmen’s Compensation Fund before and had also done soipe \york on one occasion for the Department of Welfare, and on one of these Jobs, the work was almost completed before he received a purchase order. With this prior experience in mind, he said he had no hesitancy in proceeding with the subject work without a purchase *147 order. The respondent, in an attempt to limit any award to a quantum meruit recovery, introduced testimony from Robert E. Agsten to the effect that he could have done the work for the amount of his bid and could have made a reasonable profit. Respondent also called Robert Estep, Vice President of Asbestos Insulating Company of South Charleston, a reputable concern, and he opined that his company could also have done the work and could have made a reasonable profit for the figure of $4,540.00.
While we are of opinion that the B organ bid was high and the work could have been accomplished for a lower figure, we feel that equity and good conscience compel a different result. Brogan submitted his bid in good faith. Through no fault of his own, an inter-agency dispute followed. He received written and oral notification from Mathewson that he was the successful bidder and was instructed by Lane to proceed with the work. The wheels that set this unfortunate situation in motion were turned by either respondent or Finance and Administration, or by both parties. Any result other than to award Brogan the full amount of his bid or $14,695.00 would, in our opinion, be unconscionable.
Award of $14,695.00.